## HUNTER v. UNITED STATES.
### No. 42418.

Court of Claims.
May 4, 1936.

Clarence E. Clifton, of Memphis, Tenn. (Randolph & Clifton, of Memphis, Tenn., on the brief), for plaintiff.

J. H. Sheppard, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The decedent, Charles W. Hunter, died January 8, 1929, at the age of eighty-five years. The property in question was actually transferred by the decedent to seven of his nine children July 9, 1928, about five months prior to his death. However, he had endeavored in June, 1925, to transfer such property to trustees for the benefit of all of his children, which transfer was not completed by reason of a disagreement among the children as to the interests which they were to receive. The Commissioner of Internal Revenue determined that the property involved was transferred by the decedent in contemplation of death, and such determination must stand unless it is overcome by proof that the dominant motive of the decedent for making the transfer was other than contemplation of death. In our opinion the record not only fails to overcome the Commissioner's determination, but it requires the conclusion that the transfer in question was testamentary in character and was made in contemplation of death.

The decedent was in poor health in 1923 before he gave any serious consideration to the matter of transferring his property to his children. He went to Johns Hopkins Hospital August 3, 1923, where his condition was diagnosed as cerebrospinal syphilis and arteriosclerosis. He remained there under treatment until August 31, 1923, when he was discharged, without improvement of the illness with which he was found to be afflicted. The decedent returned to his home in Memphis and his condition appears to have grown worse.

In the latter part of 1923 or early in 1924 the decedent began considering the transfer of all of his property to his nine children. As a result of this deliberation, he executed a common-law trust on June 9, 1925, equally dividing his entire property among all of his children. This division of the property was objected to by one of the children with the result that the transfer was not consummated. The decedent left the matter of agreeing upon a substituted plan entirely to his children. The trust was finally revoked and in 1928 the decedent transferred all of his property, except an automobile and a life estate in the home in which he lived, to a corporation for stock. Six months later he transferred the entire stock of the corporation to his children without consideration in money or money's worth in the proportions agreed upon among the children.

Plaintiff contends that the impelling motives for the transfer by the decedent of all of his property to the children were (1) to accomplish a fixed purpose and desire which he had as early as 1913 to retire from active business and to place the management of his business with his sons; (2) to relieve himself from worries and responsibilities; (3) to equalize his bounty among his children; (4) to continue his policy of making gifts in his lifetime so that the children might be independently established; and (5) to protect himself from possible judgments and lawsuits which might arise out of operation of his business. With reference to alleged motives (1) and (2), the facts disclose that the decedent had retired from active business and had placed the management thereof with his sons long prior to the time the transfers in question here were made. This thought therefore did not, we think,

prompt the decedent to dispose of his property when the transfer was made, inasmuch as he had previously divested himself of all responsibilities and worries connected with his business affairs. With reference to alleged motive (3), the facts show that the decedent gave no consideration in the final division of his property to equalizing the gifts made to his children. When he executed the common-law trust in June, 1925, which had been under consideration by him since the latter part of 1923 or early in 1924, he provided for the issuance of certificates of beneficial interest to all his children. The certificates entitled each child to an equal share in his estate. In the trust provisions no consideration was given to advancements previously made to any of the children. They all shared equally under the trust. This trust was to become effective when the trustees had obtained the signatures of the beneficiaries named therein. The decedent did all that was required of him to make the trust effective and it probably would have become effective had not one of the children objected to the manner in which the property was being divided. Thereupon a controversy arose among the children with reference to the interest which each of them should have in the property by reason of the fact that the decedent in the trust had given no consideration to prior advances made to two of his sons. Each child endeavored to obtain as large a share of the estate as possible and the decedent left to his children the matter of agreeing upon the division of his property. They finally agreed and also agreed upon the substituted plan hereinbefore mentioned, which the decedent carried out. With reference to alleged motive (4), that the decedent desired to continue his policy of making gifts in his lifetime so that the children might be independently established, the facts show that the children were already independently established. Walter and Frank Hunter were engaged in business for themselves; Edward Hunter had complete charge of field operations of his father's business; Chatham had complete charge of the administrative and financial ends of the business; and Manuel also worked for his father, both in the field and in the office.

The four daughters were all married and the record does not show that they were in any way dependent upon the decedent. Moreover, the facts do not establish that the decedent had ever adopted a consistent policy of making gifts to his children during his lifetime. All that the facts show in this respect is, that at the time Walter and Frank Hunter entered business the decedent advanced some money to them for that purpose and, subsequently, when Walter became financially involved, the decedent paid certain notes which he had guaranteed at the time the obligation was contracted; that he gave one of his daughters sufficient money for a trip to Europe; and that he bore the expense of his younger son at Yale. These facts do not justify the conclusion that the decedent had adopted a generous policy of making gifts to his children during his lifetime in order to establish their independence, and the final distribution by the decedent of all his property to his children, at a time when his health and physical condition were such as disclosed by the record, cannot be considered as the continuation of such alleged policy. With reference to alleged motive (5), it appears that the lawsuits which had been instituted against the decedent under the penal statutes of Mississippi for cutting trees on property, which it was alleged he did not own or had not leased, had all been disposed of prior to the time when the transfers here in question were made. Moreover, the decedent had fully protected himself against adverse results from further lawsuits of this character in organizing the Valley Contracting Company in March, 1926, which company entered into contracts for the furnishing of willows. The decedent's personal estate was therefore entirely exempt from execution under any judgment that might be obtained against the Valley Contracting Company.

For the foregoing reasons and upon the facts in this case, we are of opinion that the transfer made by the decedent July 9, 1928, of practically his entire estate was in lieu of a testamentary disposition and that such transfer was made in contemplation of death (finding 23). The plaintiff is therefore not entitled to recover and the petition is dismissed. It is so ordered.